As regards time, equity acts either in analogy to the statute law or common law. When to the former, the statute of limitations is introduced with all its rigors, time is a positive bar, it may be pleaded, it is cause for demurrer, nothing prevents its operation but what will have the same effect at law; when it begins to run, it continues to run, notwithstanding supervenient disabilities; if all the complainants are not within its saving, all are without them.
Where it acts in analogy to the common law, time is no bar of itself, but it furnishes evidence of a fact which is a bar, payment or satisfaction, or possibly abandonment; the lapse of time itself is not, therefore, pleaded as a bar, but the fact which may be inferred from it is; but it is an inference of fact, not of law, as under the statute; it is offered as evidence, and, like all other evidence, may be rebutted; there is something like an exception: when the lapse of twenty years, without other circumstances, is relied on, from this alone a presumption of payment is inferred. It is one of those cases mentioned by Lord Erskine; the mind forms no belief about it for want of data, yet it is an inference of fact, and the belief, if it deserves that name, may be repelled by evidence, either dehors or intrinsic, and a bill in such case cannot be (421) demurred to for want of stating those circumstances by which it is repelled, for they are matters of evidence only, and the bill should contain the facts and not the evidence. The first class of cases embraces *Page 201 
those suits in equity where the matter of them may also be the subject of one of those actions at law, enumerated in the statute, and in England at this day also, all suits in equity, where the subject of them isanalogous to the subject-matter of any of such actions. An instance of cases of the first kind is a bill for an account for the same thing as would support an action of account at law; six years is a bar in such case, and may be pleaded as such. An equity of redemption, or an implied or rather a constructive trust, is an instance of the second kind; twenty years adverse possession in such cases is a statute bar, and may be pleaded as such. The equity of redemption and the constructive trusts, being analogous to legal estates, an entry into which is barred by an adverse possession for twenty years, a bill to redeem, after twenty years, such possession, without stating on its face that which would take the case out of the statute at law, is bad on demurrer. So all the late cases on the subject, and particularly Beckford v. Wade, 17 Ves., 98, and Walpole v.Clinton. When we adopted our rules as to time, as regards equities of redemption and construction trusts — indeed, as to all cases except in such where the subject of the bill might be the subject of one of those actions enumerated in the act — the rule was understood to be framed in analogy to the common law; it was thought, both here and there, that the statute had nothing to do with it. Time was, therefore, considered as a mere matter of evidence, a presumption of fact; it, therefore, did not vary with the change of time by the statute from twenty to seven years, as it would have done if it had been thought to have been formed in analogy to the statute of England. It was easy to make the change in the decisions, for the time remained the same, towit, twenty years. We have adopted the common-law rule throughout. Twenty years of (422) itself forms a presumption of payment or satisfaction, as it does at law; but is here, as there, a mere inference of fact. Time is the evidence, and the inference may be repelled here, as it is there. It cannot, I think, be denied but that, upon principle, the late English decisions are right, and, of course, that ours are wrong; but after an uniform train of decisions for more than a century, the principle has something like legislative sanction; we cannot make a change; too much property depends on it. We must, therefore declare the rule to be that less than twenty years will not bar an equity of redemption, or an implied trust; and that should a longer period elapse, it is but matter of evidence, and that the presumption arising from it may be repelled; but that twenty years of itself, without proofs either way, dehors or intrinsic, raises a presumption of payment, abandonment, or satisfaction, imperative on courts and juries, as to equities of redemption of personal property, and implied trusts relating to the same, particularly as to slaves. I believe, but I am not positive, that the same rule has always prevailed. We can *Page 202 
get nothing on the subject from English decisions, personal property not being the subject of mortgage. It is there called pledging, in regard to which they have very different rules from those applied to mortgages. Pure trusts are not subject to the operation of time; for the possession of the trustee is the possession of the cestui que trust. It is that which supports and fortifies his estate, and which, in fact, cannot exist without it. An analogy to the law time forms no bar; for the cause of action does not accrue unless the trustee thinks proper to consider that it has; for it is not in the power of such a trustee to put off his character at pleasure. It was by agreement that it was created, and it requires the consent of both parties to put an end to it; but the cestuique trust may, if he thinks proper, consider the trust as at an end upon any misconduct of the trustee; but the trustee cannot, by his act or declaration, shake off his character. I am, therefore, disposed to (423) doubt the correctness of some late opinions that in such cases time begins to run from the time the trustee disavows his character, and that is made known to the cestui que trust; for I am persuaded that he can no more, by his own act, put off his character than a tenant can, during his time, put off his and convert his occupation into an adverse possession. During the period allowed by law for the settlement of the estate the administrator may be considered as holding the property on an express trust, and afterwards, perhaps, as to negro property, it would be doing him no injustice to view him in the same character; for, by law, he cannot purchase them himself, nor can they be rightfully sold by him but by an order of the court, and then only for the payment of debts, where the perishable property is insufficient for that purpose, or for the purpose of making division among those entitled. But this case does not require that this question should be decided; for the case is, I think, against him, upon the ground of his standing as a trustee by implication or construction, a situation more favorable for him.
It appears that at the second sale — for I pay no regard to the first, as far as purchases were made by the administratrix — that the girl Flora was not sold, she being claimed by Mrs. Torrance, upon some frivolous ground; that afterwards, when the settlement or statement was made by the commissioners, Huggins and Davidson (upon which settlement Torrance's distribution among each of the distributees was made and at different periods of time), she was not brought into account, and had she been sold for the payment of debts, it is to be presumed it would have been then alleged by him, for the statement was made long after the death of Falls and his marriage with the widow. All these facts show very clearly, I think, that she remains yet to be accounted for. It is a case where the next of kin do not barely show that he was once liable, and call on him to account, in which case lapse of time would of itself *Page 203 
afford presumption of satisfaction, but by these proofs render it (424) next to impossible that he should have accounted. I lay no great stress upon Torrance's declarations that Falls' children should enjoy the fruits of their father's labors, further than to rebut the idea of abandonment, for it grew out of some conversation in the family relative to the claim (I presume) for those negroes, for it does not appear that they claimed anything more; but it weighs nothing with me, as to Torrance's recognition of their right; for I think it was nothing more than a mere gratuitous promise, which the law does not recognize, but refers the obligation entirely to the will of the person who made it. An account, therefore, will be taken of the hire of the negroes and the expense of raising them, allowing all moneys or other things expended for their support. The account may be taken by any one the parties may agree on to do it; otherwise, by the master of this Court.
Cited: Nesbit v. Brown, 16 N.C. 31; Petty v. Harman, ib., 194; Benzeinv. Lenoir, ib., 264; Robinson v. Lewis, 45 N.C. 61; Glenn v. Kenbrough, 58 N.C. 174; Whedbee v. Whedbee, ib., 394; Comrs. v. Lash, 89 N.C. 168;Grant v. Hughes, 94 N.C. 237; Summerlin v. Cowles, 101 N.C. 478; Worthv. Wrenn, 144 N.C. 660.